Good morning, your honors. My name is David Zugman, and I'll be arguing the cause on behalf of all three petitioners. Your honors, this seems like a very simple case to me. It's pretty obvious that there was no Rule 11 error committed during the plea colloquies before the magistrate judge. That being the case, the district court had no discretion to deny or to not accept these tendered pleas. Well, except the government pulled out. Right, but the government doesn't have an ability to pull out. Yeah, that's the question. Why not? Well, Rule 11 doesn't provide for it, right? I mean, there's no portion of Rule 11 that gives the government the ability to withdraw from a guilty plea. There is no... in fact... Well, after it's been accepted, it can't. Why can't it withdraw before then? There's no provision in Rule 11. Not one word in Rule 11. You mean if you have a fouled up Rule 11, that there's no discretion? That's the key. No, Judge Kaczynski wrote very carefully if Rule 11 touched all the bases, then you'd lose the discretion. But before that, you know, you're still grading the papers of the magistrate, and if you find something there, you still get a chance to clean it up. Absolutely, but there's no error. That's the problem. If there were an error, I wouldn't be up here. The case would have never got this far. But at this point, after we've been... No error between two years and 20 years? Well, under Barrios-Gutierrez, the magistrate judge or the district judge is supposed to advise them about what the worst possible case is. They are not telling them exactly what the sentence will be. They're saying, look, this is the worst possible case. And the worst possible case was 20 years. And so far from being error, that is precisely what we wanted the magistrate or district court judge to do. Say, look, you know, I don't know exactly what your sentence is going to be because I haven't seen the pre-sentence report. I don't know all the factors that may cause the prior conviction exception to apply. Therefore, I'm telling you, worst case, 20 years. That's what they're supposed to do. So that is not an error in any sense of the word. Well, explain to me again why can't the government say, you know, it's one thing after the plea has been taken, but the plea hasn't been accepted. Why can't the government, just as the defendant can, if he stands up there and says, you know what, I just can't do it, Your Honor. I'm not guilty. And I'm not going to say I'm guilty. I'm sorry. I know we went through this whole thing with the magistrate judge. But I know defendants are not that articulate. But that's what they would say to a translator. You know, it was basically, I didn't do it. And I know that this is a free country. You're entitled to a jury trial. And I want jury trial to prove my innocence or to force the government to prove my guilt. I'm just not going to do it. Can the judge say, well, sorry, son, you went through this whole thing with the magistrate. You are now stuck pleading guilty and it doesn't matter what you say? I have several answers to that point. The first being that Rule 11 is an asymmetrical rule. A defendant pleading guilty is admitting all the facts against him. He has decided to say, I am authorizing the district court judge to impose sentence upon me. It's district judge. Yes, the district court judge to impose. District judge. Yes. No district court. District judge. District judge to impose sentence upon me. Rule 11 is an asymmetrical rule in that regard. The time that the government has the ability to withdraw is from a plea agreement, not from a guilty plea. And that is Washman. That is Savage. And in those cases. Maybe another. We keep focusing on the government, but why doesn't the district judge have an obligation and the authority to make that determination himself or herself? The district judge has an absolute obligation to review the Rule 11 colloquy. But if the bases are touched, first, second, third, and home, you can't say, well. And the district judge says, no, I mean, I'm looking at Covey and Sandoval, and you slid past home plate. I'm sorry. You didn't touch it. So we're just going to go back. Not charged. I mean, that would be, I think, Your Honor, would be unfair grounding if the date of deportation were charged and Mr. Garcia-Aguilar and his co-defendants were not advised of that. I think then we'd be in a quasi, in a minority situation, where you had a fact that was clearly an apprendee fact, which the defendant was not advised of. But there's no charge of a date of deportation in any of these indictments. The indictments as written and read and found by the grand jury did not charge that consequential element. So it would make no sense to say that this fact, which was not charged, the magistrate judge erred by not reviewing this fact, which was not charged. Simply, there is no rule of an error. Now, I want to go back for a moment to the discretion question, because I think this is an important one. The defendant's right to plead guilty is of constitutional magnitude. That is the patent case, and this is important. A defendant has the right to plead guilty. I'm going to repeat that. The right to plead guilty, and it is of constitutional magnitude. A district court judge has no authority to prevent a defendant from saying, hey, I don't want to go to trial. I want to waive my rights. I want to plead guilty. A district court judge is not allowed to interfere with that. And Rule 11 is very clear in this regard. It specifies the situations where a district court, sorry, district judge has discretion to reject a plea, a no low plea, quite in the Bearden case in the Sixth Circuit. That was what Bearden was talking about. A no low plea cannot be accepted by a magistrate judge, because a district judge is the one who has the discretion given to the judge under the rule to decide whether a no low plea will be accepted. However, by negative implication, that is not given to a district judge in the context of an unconditional plea of guilty. Well, let me ask it a different way. What was the factual basis to support 20 years? Well, at the time, district judges were regularly. And I think some still do. Finding dates of deportation at sentencing and imposing sentences above two years. That happens all the time. So when a magistrate judge reviewed that with the defendants, the magistrate judge was being absolutely accurate. But there would be no basis for 20 years absent the proof of that date, correct? Correct. And so if there is no proof of that date, then it wasn't the plea colloquy defective, because saying 20 years had no factual foundation. Subsequent changes in the law do not render guilty pleas unknowing or involuntary. That is this Court's decision in Pacheco-Navarrette, and it is absolutely the right decision. That's a different question. Has any court ever said that? From the district court's point of view, the district judge can't make that statement. No. Yeah, it seems to me that if Pacheco-Navarrette's holding is correct, and I believe it is, the rationale is this. The hierarchy of the law is this court is not allowed to guess about what the Supreme Court is going to do with its law. District judges are not allowed to guess about what this court is going to do with the law. That's how it goes. If a judge were to guess about what the law is going to become, they would be necessarily disregarding then existing law. And there is no argument, no sensible argument to be made, that the magistrate judge said anything incorrect at the time of the plea. It was only subsequently when Covian came down some months later that, hey, look, it really is a two-year maximum. And this is near and dear to me because, of course, I was Mr. Covian's lawyer on appeal. And it just seems to me that someone ought to benefit from that ruling. And it's very plain what's happening here, right? I mean, we really can't say that the district judge was being solicitous of the defendant's rights. He's preventing the defendants from pleading guilty. They were the ones who walked into court, admitted every allegation the government had brought against them, and were prepared to be sentenced in accordance with that. And this is just like, exactly like, Velasco Heredia. So this, in your view, does not depend on the government's consent? No, absolutely not. This is the defendant's unilateral right to plead guilty to the charge in the indictment? Admit every element against him, absolutely, yes. Defendant is not allowed to pick and choose. So this is really not Ellis in those cases, because this is not a case where the district judge refused to accept a plea that the government consents to and then implicates questions of prosecutorial discretion and so on by saying, no, the United States should have charged more or shouldn't have settled so cheaply. Right. This is a case where the defendant just walks in and says, I want to plead guilty to the charge as presented, and the government says, well, no, we want to dismiss that charge or get a superseding indictment, not let him plead guilty to the charge as it now stands. We want to, I don't know exactly what the procedure is, but I guess you don't dismiss this when you get a superseding indictment. Is that what happened? Yes, that's what happened in each of these cases. So why? Your position is that the district judge must accept a guilty plea right there on the spot. Yes, that's not my position. You've got the plea for up to 20 years, and the district judge says, well, he moved the goalposts, but I can just forget that because he's made an unconditional plea, so I'll give him 20 years. Do you think that would hold up for five seconds? A defendant has no ability to do this. Do you think that would hold up for five seconds? But I have an answer for that, which I think. Just answer it. No, it wouldn't, but the reason for that is the defendant's consent does not. Well, then how can it be final? A defendant cannot agree to a statutory maximum beyond what the statute of conviction provides for. A defendant has no ability to say, you know what, even though this is a two-year case, I consent to it being 20. What's the purpose of advising during the colloquy of the maximum? To tell the defendant what the worst-case scenario is. That is absolutely the purpose. And the purpose of that would be that may well affect your decision to plead guilty, correct? Right, but it's knowing. If I tell you your maximum is 20 years, and at that moment it's really 24 months, you don't think that has any effect on the validity of the plea colloquy? Absolutely not, and it's not my opinion on this. This is what Pacheco-Navarrette, you know, specifically holds. It's not, and I think it's the right rule, because what we have, the purpose of the Rule 11 colloquy, as explained in Barrios-Gutierrez, is to tell the defendant the worst possible case. It is not to tell the defendant what the exact statutory maximum is on the day of the plea. So even if it's correct, and I think it is true to say that he was only subject, these defendants were only subject to a two-year statutory maximum, and actually Mr. Mejia-Limas actually objected on that particular point. But the purpose of the colloquy is, hey, saying look... But Pacheco-Navarrette wasn't his challenge that there was a failure to advise of the booker. Right. And I think that's a distinction from this situation. I don't see that as a distinction. I understand Your Honor's point that he was told 20 and it was really 2, but this is the situation of Barrios-Gutierrez specifically, which is you're supposed to just tell him what the worst case is. The purpose is, hey, if you're going to plead, understand this is the worst possible consequence. Why don't they tell everybody, you know what, life. You'd be safest if you said on every plea, it's 24 months, but frankly, death. Yeah, death is the worst possible thing you can get. And then don't you think that people would come back and say, wow, I thought I would get the death penalty. Of course I jumped at the plea offer. 90% of the drug cases I handle, people are told life when it's really going to be a 2-year case. 90%. That doesn't make it right. But it makes it correct under this court's case law. I mean, the purpose of Barrios-Gutierrez is saying, look, this is the worst case. That's what we're telling you. We don't know today what the statutory maximum is going to be, but if it turns out that it's 20, you're stuck with this plea. If it turns out that it's 2, you're stuck with this plea. And that is a fair rule because you're telling them what the worst possible case is. And I want to go back to the asymmetry of Rule 11. Because were it any other litigant, the plaintiff in the last case, they bring a civil complaint. The defendant says, I admit everything in that complaint. I'm ready to have judgment entered accordingly. And then the plaintiff says, oh, wait, wait, I forgot to allege $20 million or whatever it is, or some type of relief. You know what the answer is from this court. You wrote the complaint. He admitted it. It's over. It is only because it's the United States government sitting here that we're even having this discussion. Because these defendants happen to make a beneficial plea, and the district court wants to exercise discretion to reject that plea because the district court, district judge, recognizes that the plea is beneficial to them. That's not right. It's not fair. And it shouldn't be a rule. I wouldn't be talking too much about fair. I think 24 months for a status crime is plenty. The funny part about Mr. Garcia-Aguilar is he doesn't even have an aggravated felony. We're up here arguing over seven months. There's a case that certainly should have settled. The other guys have a little bit more authority. There's always that possibility, right? I had two of these cases at the district court level, and both of them settled for 24 months. And I don't know that it was anything special about the litigation stance at that time. It might have just been because Kogan had just come down. But I think we do want to. How many cases are in this? There are three, but there's this other one, Lopez-Rojo, where the mandamus was denied. And that one the government has just filed its answering brief. I'll probably file a motion saying we should probably just leave it as cases. So the universe of cases trapped in this time warp is four? I think it's four. In the southern district. You know, you guys can work this out, these four cases. I'd settle it today for 24 if the government's willing to do it. I might settle it for 25. And with that, we can't get involved in it. Can't you give the settle advice? Well, when I say settle, I don't mean do it here with us present. Oh, fair enough, fair enough. Go outside. I just have one further point on the Article III stuff. It's 90-plus percent of the cases in the southern district are referred to magistrate judges for the police. It's actually a requirement of the fast-track program that these cases go to the magistrate judges. And every district judge that I know of requires us to take these cases before the magistrate. I know we have a right, but it's not really a right. We're told to do it, and we do it. And in Rangitapia, this court set on bonk that, look, once you have a Rule 11 plea before a magistrate judge, if nobody objects, that's the end of the matter. You don't need to have formal acceptance. And if that's true, then how can we? That's not true. I've served this other district taking 30 pleas in an afternoon or sentences from magistrate judges. In every case, you review the plea colloquy for its adequacy. Oh, absolutely. And not in every case do you agree that it's complete. It's not required, though. In Rangitapia, it's very clear on that point. You know that. Yes, I'm not disappointed. But it doesn't matter because here we have an objection from the government. They never objected. They just superseded the indictment. They never objected to the magistrate judge's ruling. Tell me about the timing. When did they supersede the indictment? As we got close to sentencing. So what happened was we got to what would have been the sentencing hearing. We filed objections and, look, it's two years. I've got the timetable here. Judge, just give me a second. They took the guilty plea on July 10, 2006. And then the case on September, then on August 31, the Sandoval case came down. That's August 31. And then on September 29, they came down with a superseding. They filed objections to the PSR. We did. And then the superseding indictment came down October 25. Right. No objection by the government. Never an objection by the government. And there wasn't a basis for an objection. It would have been well taken. Now, maybe we'd have a different case if the government had simply dismissed and then tried to recharge them correctly. That would have been an interesting tactical maneuver. However, interesting but only hypothetical. They did not dismiss. They just filed a superseding indictment. Exactly. So what happens when they file a superseding indictment after the proceeding for the magistrate judge but before the plea was finalized by the district judge? Before the formality of acceptance had occurred. Sure. You know, you want to call it a formality, but. . . That's not a locution that I'm just making up. It is a ministerial act. It is a formality. Only if Rule 11 has been complied with. I have to win the Rule 11 argument. I got that part. But I still have not. . . That's where you have your problem here. I can't see how that's true unless you're going to reconsider Pacheco-Navarrette en banc. Because Pacheco-Navarrette very clearly says a judge is not required to guess about what the law is going to become. It shouldn't be the rule. It isn't the rule. There is one clear outcome. Let these guys through the 24-month window. I'd like to reserve the rest of my time. Judge. Mr. Haynes. Yes. Always good to see you. May it please the Court. Roger Haynes, Assistant United States Attorney for the Southern District of California, representing the government in this case. Let's see. You can't just make these cases go away. I wish I could. I love your advice to the last group. We just can't seem to get together on this one. And we had such a good time last time we asked the Court to render the opinion in Ramirez, Vasquez-Ramirez. We thought I'd come up this time and ask you to tell the judge not to take the plea. We can offer you our mediators. They're very good. Really. They can settle death penalty cases. Is it true there's just basically three or four cases that fall in this category? Four that we know of, yes. And so the government's position is they want to go back, supersede the indictments, and? We believe a couple of things. We believe the Rule 11 proceeding before the magistrate judge was ineffective. And on that point, I think it's important to talk about Cobian and Sandoval because when it came down, it, of course, says what the law always was, and that although the plea was not, the magistrate judge would not have known at the time that he took the plea that the date of the prior deportation was an element, it now is an element, and by the time it gets to the district judge, he knows that it's an element, and it was an element at the time he was in. Beyond these four cases, there's still a bigger picture because they're always changing the goal to impose on us, and you can have dozens of pleas hanging out there, and they change it, say, well, you have to tell them about food stamps. They're going to lose your food stamps. Trot brought that one in on us. So now you're sitting up there as the Article III judge. You're looking. Didn't tell them about the food stamps, and then they say, well, they have to, you know. And as Your Honor knows. You've got to put the final stamp on it, and the final stamp is the Article III judge, isn't it? Exactly. That's the ultimate question here. When the case is before the Article III judge. What do you think about Vasquez-Ramirez, though? Well, I think Vasquez-Ramirez is distinguishable because in that case, first of all, the district judge never questioned the Rule 11 colloquy before the magistrate, and that was not the basis for his refusal to take the plea. And in this case, there's been a change in the law, and it's clear that there was a problem now with the plea colloquy before the magistrate. What about Barrios-Gutierrez? Barrios being? I'm sorry. Well, I thought that was another one where basically if the colloquy was. . . I thought it was Pacheco-Novaretti, but he was Rolando. Well, he did both of them. Okay. Pacheco's a different one. Pacheco's the one where, well, I guess it's not clear from the record in Pacheco when this sort of new decision came down. You have to kind of read between the lines in that one. The maximum penalty one. Our response to Pacheco, by the way, is the Forrester case, which says that if you overstate the maximum penalty, that is a Rule 11 violation. I'm sorry, Your Honor, clarify the question. Okay, so I'm sorry. So let's just go back to that because that was my question to the defense counsel was if you say it's 20 years and it's not, then in and of itself, is there a deficient plea colloquy? We rely on the Forrester case, which is in our brief, although I do have the cite. We cited it before it had a cite. But if you look at 495, that third, 1041, Ninth Circuit, 2007, that case says that if you overstate the maximum penalty, that is a Rule 11 violation. The plea is not knowing and voluntary. And the reason is obvious. A defendant who knows that he's facing only two years, no matter what he does, might very well roll the dice and say, I'll have a jury trial. I've got two years no matter what. Why wouldn't I go to jury trial on that? Whereas a defendant who's told that he's facing 20 years might well take the plea agreement and say or just plead guilty in order to get his acceptance of responsibility rather than going to trial. So it does make a difference. So what happens if Congress passes new legislation between the time of the acceptance of the plea, I mean between the giving of the plea and the plea colloquy and the plea agreement and the acceptance by the district court and changes the mandatory minimum, for example? Do you have to go back and redo the plea? Which law is applicable at that point? Well, that would be an interesting, well, although I don't think we'd be here because the defendants would not be pressing to get their plea accepted in a case where they know that the judge is now compelled to impose the higher sentence unless, well, they'd be making the same argument. They'd be making the same argument, I think. They would. They would. I would say that the time I tendered that plea, that becomes judgment. That's jeopardy. The whole ballgame is over. And I don't get the mandatory minimum. Right. And I think the government's position would be the same as it is in this case. The district judge is an Article III judge. He must have discretion to redo it at that time. And when he redoes it, that's the point at which it counts. That's when the Rule 11 is occurring. That's when the law is known to everybody and the law is applicable at that time. And the mandatory minimum does apply. First, there's a forever case. The issue there was whether or not the defendant was properly cautioned to go without about the dangers of going per se. And what we said as well, the court overstated the maximum penalty and maybe sort of scared him off from going per se. Good point. Why is that applicable in our situation? Why is it applicable? Yes. I mean, we are in a different context here. We are in a context of Rule 11 pre-colloquy. First, it's not directly on point. You have to show why. It seems to me fairly straightforward. The judge being the Article III judge can reconsider that for that hearing before the magistrate because he's an Article III judge. He's not bound by that at all. Well, you cited first a different proposition. The proposition was that overstating the penalty winds up being a defect, a material defect. It's not clear to me why Forrester applies. Because the magistrate judge, because we know under Covion what the real maximum penalty is at the time the plea was tendered to the magistrate. And because Covion applies to that, we now know that the magistrate judge overstated the penalty. I understand that. But the answer to that is so what? Well, so what? So he got over-cautioned and he decided to take it anyway. He says, even though I knew or I thought wrongfully that I might get 20 years, I accepted it anyway. For sure I would have accepted it if you had told me that I would only get two years. So it's a totally no harm, no foul situation in this context. But the district judge is entitled to satisfy himself whether it's no harm, no foul by saying, I want to give you a new Rule 11 proceeding. I want to tell you what the real penalties are now. It sounds to me like what's going on is the district judge is saying, I don't want you to get the benefit of this great bargain, so for your own good I'm going to not accept the plea, so for your own good so you can be exposed to 20 years. But in reality, there's no over-cautioning him as to the likely sentence in the Rule 11 Convocate. Even if you say that, the fact of the matter is he says, I accept it anyway. I accept it even though I know the penalty will be so huge. Well, of course he would have accepted it if you know the potential penalty is less, wouldn't it? Well, again, I think the district judge has the power to say, I'm just going to redo it. But there are many defects in that Rule 11 Convocate before the magistrate. If you want to say that's not the defect, you can say, well, there was no factual basis for an essential element, which we now know is the date of the prior deportation. Now I'm remembering about Barrios-Gutierrez. One of the things it says in there is that Rule 11 doesn't require the district court to announce authoritatively the actual maximum sentence at the plea-taking stage. So what does that mean in the context of this case? Well, we have to have that rule because we have this very strange situation where we have statutory maximums and then we have guideline ranges. And so there's almost no way for a judge to state what the real maximum sentence is going to be for a defendant. If this was final at the time of the plea, then the penalty was stated to be 20 years. Is it final for 20 years? Or would a defense counsel, when the new case comes down, say, you can't possibly get 20 years. It has to be proven that you've been deported, and that has to be done independently. And therefore, we want to withdraw your exposure to restrict it down to two years. Wouldn't he have an obligation, or she, to advise the client that that isn't final? Of course. And I think the fact that that element was left out at the magistrate level is another reason why that plea was no good and why a district judge now, based on these changed circumstances, is certainly entitled to say, I want to have a new Rule 11 proceeding. And I think it's important to know. I don't think the district judge would even be thinking about a new Rule 11 proceeding if the government hadn't come in with the superseding indictment. Well, of course. So the district judge would have said, looks good to me. Rule 11 colloquy is on track. Even gave him some extra advice on the 20 years, and I approve the plea. Well, I mean, I'm not sure of that. I mean, all the judges knew about Kovian-Sandoval. They might well, on their own motion, have said, I don't think this plea is good. And if you read their various comments, they certainly, all of them, agreed that the plea was no good because of the Rule 11 violations. Not very persuasive comments, I must say. I thought they were the kind of comments that were designed to achieve a result, which is to deny these defendants what the district judges thought was a windfall. Pure and simple. It clearly is a windfall. This is an apprehendee element that no one really disputes. And we know that from the fact that so many defendants who actually were sentenced before Kovian, and therefore Kovian applied to them while they were on appeal, those defendants did not get the benefit of Kovian because of harmless or plain error. Because there really is no way to dispute. It's a valuable lesson learned by the government, you know. I'm sorry? It's a valuable lesson learned by the government for which it will doubtless be grateful to us. Yes, yes. We are always grateful to learn. Four cases doesn't strike me as too much of a price to pay. You made the deal. I mean, you made the deal. Everybody saw that's what the law was. The law changed, and they went for Kovian. I think this is about rule of law. The district judge's statements and explanation as to why this was somehow a defective colloquy just strikes me as... Even if it's not persuasive or... Not worthy of an Article III judge. Even if it's not persuasive, I think the court has to rule that a judge has discretion to say, I will not take that plea. I want to do it again. What do we do about the opinion and... I get all these cases confused. You know what I'm talking about. It's the one I wrote. Vasquez or Ramirez? That's the one. Yes. What do we do about Vasquez or Ramirez? Vasquez or Ramirez says, look, the defendant is entitled to come in and say, I'll take it! And no force in the world, even an Article III judge, can deny him that. I think that's what it says. There was no dissent. There was no petition for a hearing. There's two or three major distinctions between this case and that case. One, the judge said nothing about having any problem with the Rule 11 colloquy. I understand, but I've told you, I don't think that those problems are real problems. I know my colleagues would disagree with that. I think those are excuses. Those are plain and simple made-up reasons that have nothing to do with Rule 11. So let's put that aside. I just saw Your Honor with the last argument. I'm not sure I want to start with my second and third responses. Well, this one didn't work for me. I don't know. So let's say I don't buy number one, which is a pretty good assumption because I don't buy number one. Number two is what the court began with, I think, which is the government is on the other side in this case than it was in Vasquez or Ramirez. Well, it may be true if you have a plea agreement, but in this case he just wants to enter a guilty plea. So this is not a case where the government says, okay, this is the deal. We no longer want to back out of this plea agreement. This is a situation where the defendant just says, I am not asking for anything. All I'm doing is I am saying guilty as charged. I'm standing up and saying I've done it. And as far as I can tell, Vasquez Ramirez says he has an absolute right to do it. And the third distinction between this case and Vasquez Ramirez is there has been a change. There has been a change in the law. And that led to a change in the government's position as well. And we have a superseding indictment now pending. And we have Ohio v. Johnson, of which the defendants are very much afraid because they know that if they plead guilty before the district judge to the original indictment, that will be used as a mission against them on the superseding indictment, which they are still facing. So many things have changed by the time we got to the district court. Many things that were not the same in Vasquez Ramirez. No, they're willing to have the judge say at the time of the tendering of the plea, that was final. That was the judgment. They're not willing to say give me another Rule 11 judge. I'll plead now. They are not willing to say that. And that's the key to this case. They don't want an Article III judge giving them advice and taking their plea. They want to say it all happened three months ago. And that violates Article III. And how does it violate Article III? That magistrate judge was not appointed by the president. Well, that's the reason that we've said that the district judge has to approve. Exactly. Case after case. Well, but has to approve the colloquy. Well, the plea isn't final. It cannot be final. It cannot be the end. Only the district judge can make it the end. The district judge has reviews and has the final. But let's assume you're abused and it says there's nothing wrong with the colloquy. Isn't that the end of the Rule? I think if he said there's nothing wrong with the colloquy and I will take the plea, that would be one thing. No, you say I will not take the plea. There's nothing wrong with the colloquy. But I will not take the plea because I think the defendant is getting a windfall here. And I just am not going to stand for it. Which is what really happened here. No. If he had just said I will not take the plea at all, that would be Vasquez Ramirez. But if he says I will not take the plea, but if you want the plea before me, I'll take the plea. I just want to do it today, not as of three months ago. No defendant has ever asked the judge to do that. You mean go back and take the plea now to what? To the superseding indictment? To the original indictment with the superseding pending at the same time, which means under Ohio v. Johnson you're facing both. I guess I don't understand the implications of that. By the time of the plea in the district court, by the time of the acceptance hearing in the district court, there had been a superseding indictment. Under Ohio v. Johnson, if two charges are pending at the same time and you plead to the lesser, you still face the trial on the greater. It's not double jeopardy. I see. That's why they were not willing. The superseding indictment does not wipe out the original. Apparently not, Your Honor, and we don't. That's why I'm having trouble. Yeah, the law is pretty clear. It does not wipe out the original. They are both pending. In fact, the cases say you can be convicted on both. You simply can't be sentenced on both, not consecutively, if one is a lesser-included offense of the other, which they are here. Don't we come down to what Judge Kuczynski said, that what you charge is an executive decision, whether you want to charge lower, whatever. And what the judge's responsibility is, is to keep up with the law and to impose the law irrespective of the motives of the executive department. And that means the law as exists at the time the judge is going to sign on and says this abides by all the laws that exist at the time. And the laws that exist at the time required this other element. I couldn't have said it better. Four cases, Mr. Haynes. Better than one. It's more important than one. It's not insignificant, but. I don't know how to get rid of cases, though. I mean, we have this issue. It's to say it's not going to be repeated in another context. Apprendi is still out there. We're seeing new Apprendi elements invented every day, so it is an important issue. A wrong decision could be something you don't like at all. It often happens, and I'd say it happens in every case. Somebody doesn't like it. Thank you. Okay. You do have some time. I do. I have a minute and a half. Just a couple of brief points. Your Honors understand my argument. I'm not scared of Ohio v. Johnson, even the least bit. If the government wants us to do a new Rule 11 colloquy before the district court judge to the original indictment, we're happy to do that. When my client pled guilty to the indictment, he admitted the charge the government had brought. They want to change the charge. Essentially, they got their plea and they go, oh, no, we forgot to charge this element, an argument I'd been running for, I don't know, seven years, and it finally became the law. But when the judge told the defendant that it could be 20 years, he was stating the maximum possible penalty. Covian could have gone on bonk. Covian could have got overruled. Covian could go to the Supreme Court and get overruled. And so you'd want the judge taking the plea colloquy to say, hey, look, it could be 20 years, and you have to understand that. So I think the judge did perfectly fine. So you're saying that you're willing to plead in front of a district judge and take your chances on the superseding indictment? Well, I think once my client reaffirms his already validly entered plea, he is just making all the more clear how strong his double jeopardy interest is in being sentenced in accordance to the charge that the government brought. Thank you, Your Honors. Mr. Hayes, this is the beginning of a possible settlement. You said you'd be very happy to have him go back and take another colloquy before the district judge. Why don't we defer submission in this case? I said you guys go do that. And maybe we don't have to have law. I don't think that's what Mr. Lemon said. What I've said is I'll plead guilty to the original. My client will plead guilty to the original indictment without the extra element, and there's no chance he will ever admit the date of deportation. He will absolutely contend that it's the 24 months maximum, and he'll be right. Well, Mr. Hayes, that sounds to me like what you asked for. You said he hasn't been willing to go before the district judge and do a Rule 11 colloquy. He's not willing to do that. And I said in the face of another pending superseding indictment, he said yes. It's not clear to me what he's saying. Are you saying that you would plead before these judges to the original indictment knowing the superseding is done? These are the district judges in these cases, yeah. To the original indictment, and there will be no admission of a date of deportation, and he will certainly move to dismiss the superseding indictment based on double jeopardy. And in that case, we'll have a new appeal based on Haught v. Johnson because he will claim double jeopardy. Then we'd be dealing with the Supreme Court law. Yeah, that's a wholly different issue. Anyway, we leave it to you. We're not going to do it here in the courtroom. You have your possibilities. Do you accept that, Mr. Hayes? I don't know. You should have looked me in the eye and said they haven't done this, and if they only did this, we'd be very happy. You know, here on behalf of the United States, you should be jumping for joy. If the court wants to do a limited remand. Are you sure we're not violating Rule 11, that the judges shall not participate in settlement negotiations of criminal matters? I'm pretty sure. I'm sorry, I misheard, but you said if we wanted to do a limited remand. We'll chat, why don't we? And perhaps we'll send you a letter, and there might be a limited remand for the purpose of having you. We'll defer submission for a week, and a limited remand sounds to me like a good idea. Not that I express a view on these things at all. Okay, thank you. Very well argued, both sides. Really well done. Thank you, Your Honor. I recognize the gentleman. You're from the Public Defender's Office, yes? That's right. Tell me your name. Steve Hubachek. Of course, Mr. Hubachek. How are you? This was one of your cases as well, right? Yes. Okay, good to see you. Thank you, Your Honor. The San Diego crowd is great. Mr. Haynes? Thank you so much. Okay, the case is now your stand submitted. We are in recess until 1.30. Thank you. Do your best for us. See you in recess. Thank you, Your Honor. Thank you. Thank you. Thank you. Thank you.
judges: Kozinski, McKeown, Jones